]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


PEDRO L.,[1]                                            Case No. 6:23-cv-01357-HL

              Plaintiff,                          **OPINION AND ORDER**

      v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Pedro L. brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied Plaintiff's application for Supplemental Security

Income ("SSI") under Title II of the Social Security Act,  42 U.S.C. § 401 *et seq.* For the

following reasons, the decision of the Commissioner is REVERSED and REMANDED for

further proceedings consistent with this Opinion and Order.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)*. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on bipolar II disorder, panic attacks, attention-deficit/hyperactivity disorder("ADHD"), major depressive disorder, agoraphobia, and social

anxiety Tr. 67.[2] At the time of his alleged onset date, he was 39 years old. *Id.* He has a limited education, given that the highest grade he completed is tenth grade. Tr. 26, 48. He has past relevant work as a "fast food worker, cook, and Laborer, Stores." Tr. 26.

Plaintiff protectively applied for SSI on January 31, 2020, alleging an onset date of July 18, 2018. Tr. 67. His application was denied initially on January 1, 2021, and on reconsideration on December 2, 2021. Tr. 81, 88. Plaintiff subsequently requested a hearing, which was held on April 18, 2022, before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 32-37. At the hearing, Plaintiff's counsel explained that he had not been able to get in contact with Plaintiff for months. Tr. 34. ALJ Weatherly postponed the hearing to give Plaintiff's counsel more time to contact Plaintiff. Tr. 35. A second hearing was held on August 18, 2022, where Plaintiff testified and was represented by counsel. Tr. 38-63. On September 13, 2022, ALJ Weatherly issued a decision denying Plaintiff's claim. Tr. 27. Plaintiff requested Appeals Council review, which was denied on July 24, 2023. Tr. 1-6. Plaintiff then sought review before this Court.

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[2] Citations to "Tr." are to the Administrative Record. ECF 9.

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 31, 2020, his application date. Tr. 19.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "bipolar II disorder, major depressive episode; ADHD, predominantly inattentive type; panic disorder with agoraphobia; generalized anxiety disorder; status-post left wrist fracture; right ring finger mallet fracture; carpal tunnel syndrome, and post left biceps tendon repair." Tr. 19-20.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. The ALJ then resolved that Plaintiff had the RFC to do medium work with the following limitations:

> [He] can never climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger bilaterally. The claimant can understand, remember, and carry out and persist at simple, routine, repetitive tasks, make simple work-related decisions, perform work with few if any changes in the workplace, and perform no assembly line-pace work. The claimant can have no contact with the public. The claimant can have occasional contact with coworkers.

Tr. 22.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a "Laborer, Stores." Tr. 26.

In the alternate, at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a "packager sealer, machine, waxer, floor, and a routing clerk." Tr. 27. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ committed two errors: (1) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; and (2) improperly weighing medical opinion evidence that would preclude Plaintiff from sustaining full-time work.

## I.        Subjective Symptom Testimony

Plaintiff first asserts that the ALJ improperly rejected her subjective symptom testimony. Pl.'s Opening Br. 5. This Court agrees.

### A.        Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is

not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

Plaintiff testified that he is unable to work predominantly due to mental health impairments.[3] He testified that he takes Amitriptyline, Latuda, Klonopin, Latuda, Adderall, and Ambien. Tr. 49. Plaintiff testified that when he worked at Tennessee Bulk for 15 hours per week, he experienced anxiety attacks because he is agoraphobic. Tr. 48-49. He stated he feels like a "liability" when working because when he is around a lot of people, it's like he is a different person, he gets really anxious, and "shut[s] down." Tr. 49. Plaintiff explained that his mental impairments have gotten worse over time since he last had "steady" employment. Tr. 50. He explained that when he was working at "Dolan's" he had a management job and that's when his anxiety attacks started happening. *Id.* He decided to leave that job because he was working with gas and harmful solvents, and he was fearful of "pouring gas buckets" and explained he "didn't want to catch on fire, so it was really hard there when [he] first got diagnosed." *Id.* Plaintiff also testified that he worked at St. Vincent de Paul and was having trouble with his anxiety, experienced panic attacks, felt dizzy, and was overwhelmed when working on the floor. Tr. 51. Plaintiff explained that he was sent to work in the back numerous times because he couldn't handle being around too many people, and he took more breaks than he was supposed to due to being overwhelmed, even while working in the back of the store. Tr. 51-52. He explained that St.

---

[3] This Court notes that Plaintiff testified about his carpal tunnel syndrome and mentions this condition in the briefing. Pl.'s Opening Br. 10. However, Plaintiff does not contest the ALJ's analysis of his carpal tunnel syndrome in his briefing and has effectively waived this issue. *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (stating a revieing court ordinarily will not consider issues that a claimant fails to raise "with any specificity" in the opening brief).

Vincent de Paul let him go because he "wasn't doing the full execution of the job." Tr. 52. When asked to describe his typical day, Plaintiff testified that he tries to stay inside as much as he can due to his agoraphobia. Tr. 50. Plaintiff stated that he is unable to "sit still for too long" and watch an entire movie because about a quarter of the way into the movie, his mind will suddenly start racing and "it's like [he] can't stand it." Tr. 51. He testified that when his mind starts to race during a movie, he has to get up and walk away from the movie before he starts fidgeting. Tr. 50.

The ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but their "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22-23. Specifically, the ALJ discussed Plaintiff's activities of daily living, work activity, improvement with treatment, and the objective medical evidence when discounting his subjective symptom testimony. Tr. 19-23. This Court addresses each rationale in turn.

### C.    Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

The ALJ improperly relied on Plaintiff's ability to care for his teenage daughter when discounting his subjective symptom testimony. Caring for children without assistance can be a demanding task that can undermine a claimant's assertions of disability. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, the ALJ did not develop the record regarding the nature, extent, and frequency of the childcare activities and never specified what aspects of his subjective symptom testimony were undermined by his statements that he lived with his teenage

daughter. *See Trevizo v. Berryhill*, 871 F. 3d 664, 676 (9th Cir. 2017) (Finding that without specific details about Plaintiff's childcare responsibilities, those tasks cannot constitute "substantial evidence"). The ALJ simply stated "despite his mental health allegations. . . [Plaintiff] told his provider he was able to care for his daughter by himself for more than a two-week period. . ." Tr. 22 (citing Tr. 460). The treatment note cited by the ALJ simply states that [Plaintiff's] ex-wife "dropped [the teenage daughter] off to him 2-1/2 weeks ago." Tr. 460. The record is unclear as to whether Plaintiff cared for his teenage daughter full-time or if he was receiving assistance by sharing custody with his ex-wife. At the hearing, Plaintiff testified that his teenage daughter had been living with him for about two years and that she does the majority of the household chores and is "independent." Tr. 57-58. Plaintiff has another younger daughter, and he testified that he has visitation with her. Tr. 47. Plaintiff stated "I try to get every weekend . . . I mean I do as much as I can" and he explained that sometimes his medications hinder his ability to spend time with his younger daughter. *Id.* Plaintiff explained that his visitation with his younger daughter usually isn't overnight unless his ex-wife "has somewhere to go." Tr. 47. The record lacks specific information detailing what Plaintiff's parenting responsibilities are and how they conflict with his alleged agoraphobia, cyclical mental health symptoms, and inability to be around other people. Thus, the ALJ failed to draw a connection between Plaintiff's testimony regarding living with his teenage daughter and his alleged mental impairments.

Similarly, the ALJ's discussion of Plaintiff's ability to occasionally help elderly people in his neighborhood is undeveloped. If the ALJ discounts Plaintiff's testimony but fails to connect Plaintiff's activities with those portions of Plaintiff's testimony that it undermines, the ALJ commits legal error. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (finding that the ALJ erred by "not elaborate[ing] on *which* daily activities conflicted with *which* part of

[c]laimant's testimony"). The treatment note cited by the ALJ simply states that Plaintiff

"occasionally helps elderly people in the neighborhood, does laundry, shops, very part-time." Tr.

22, 23, 25 (citing Tr. 666.) Again, the ALJ did not develop the record regarding what activities

Plaintiff was doing to "occasionally" help the elderly, how that is inconsistent with his testimony

regarding his mental impairments, and how this activity supports the contention that Plaintiff is

able to work fulltime.

        The ALJ also improperly relied on Plaintiff's ability to attain new housing when

discounting his testimony. The ALJ reasoned that "despite Plaintiff's mental health allegations . .

. he was able to apply for and attain a new apartment. . ." Tr. 22 (citing Tr. 460). The ALJ

mischaracterized the record here. Plaintiff argues that he acquired housing after a period of

homelessness only through the Laurel Hill Center, an organization committed to people with

psychiatric disabilities. Pl.'s Opening Br. 11; Tr. 460. In other words, Plaintiff was able to attain

housing with significant assistance. If anything, Plaintiff qualifying for housing with an

organization committed to helping people with psychiatric disabilities is consistent with his

mental health allegations.

        Further, even if this Court considers the ALJ's discussion of Plaintiff's activities despite

the ALJ's failure to link those activities to any alleged limitation, the activities identified by the

ALJ are not a clear and convincing reason to discount Plaintiff's testimony. *Burrell*, 775 F.3d at

1138 (holding that the ALJ erred because "the ALJ did not elaborate on which daily activities

conflicted with which part of Claimant's testimony"). When discrediting Plaintiff's testimony,

the ALJ also highlighted that Plaintiff does laundry and shops for groceries. Tr. 23 (citing Tr.

666). However, these activities are not inconsistent with Plaintiff's impairments, and are the type

of minimal activities that the Ninth Circuit repeatedly has stated do not warrant discounting

testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). This is particularly true for mental health conditions where a person's symptoms will wax and wane. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Thus, Plaintiff's daily living activities are not a clear and convincing reason to discount Plaintiff's testimony.

      **D.**    **Work Activity**

      Similarly, the ALJ's discussion of Plaintiff's work activity is undeveloped. While conflict between a plaintiff's work history and symptom testimony is a clear and convincing reason to discount a plaintiff's testimony, the ALJ must still connect plaintiff's ability to work part-time with a specific basis for rejecting her testimony. She failed to do so here. Plaintiff provided specific and detailed testimony as to how he struggled working even part-time and was let go from St. Vincent de Paul because he was experiencing panic attacks, was overwhelmed, and often felt dizzy. Tr. 51-55. He testified that he was let go from St. Vincent de Paul because he was unable to perform the duties of these jobs, even when working in the back and not interacting with the public.[4] Tr. 52-53. The ALJ failed to connect this work history with any specific basis for rejecting Plaintiff's testimony. Accordingly, the ALJ's reliance on Plaintiff's part-time employment to reject his symptom testimony was therefore not supported by substantial evidence. *See Camarena v. Kijakazi*, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021)  (Plaintiff's work history contradicted her testimony regarding her physical limitations and provided valid grounds on which the ALJ could discredit her testimony.") (citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)).

---

[4] Plaintiff was also let go from Goodwill. This was not due to his impairments, however. Plaintiff stopped working their due to the COVID-19 pandemic. Tr. 419.

E.        Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, when discrediting Plaintiff's testimony, the ALJ cited treatment notes to show that Plaintiff "improved" with mental health treatment and mischaracterized the record in doing so. Tr. 22 (citing Tr. 578). The ALJ cited a treatment note from February 2021, where Dr. Whiteley wrote Plaintiff "certainly seems to be functioning well as a father now." Tr. 578. The ALJ took this statement out of context, as the treatment note discusses that Plaintiff was stressed because "Child Welfare" came to his home to interview his teenage daughter about an incident that happened when she was younger, and Plaintiff was "beating himself up about this" because the incident took place at a time when he was "not around much, … drinking heavily, [and] not terribly involved." *Id.* The record demonstrates that Dr. Whiteley told Plaintiff "he certainly seems to be functioning well as a father now" to comfort Plaintiff and help him as a mental health professional. *Id.* Dr. Whiteley's treatment notes repeatedly indicate that his overall impression is that Plaintiff is incapable of working even part-time, which further supports that the ALJ mischaracterized the record and took the statement out of context. Tr. 452, 577; *see also* Tr. 599, 650.

The ALJ also cited a single treatment note explaining that by the end of 2021, Plaintiff reported that he was "doing very well" and that his mood, anxiety, and thinking were "much better" with his current medication regimen. Tr. 23 (citing Tr. 651). As the Ninth Circuit has

explained in the context of mental health issues, "[i]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017 (internal citation omitted). An ALJ may not select ". . . isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability." *Richard R. v. Comm'r, Soc. Sec. Admin.*, 3:19-CV-00918-MK, 2020 WL 4193114, at *4 (D. Or. July 21, 2020) (citing *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014)). The ALJ's citation to a single instance of improvement is not a clear and convincing reason to reject Plaintiff's testimony. Viewed as a whole, the record indicates persistent and severe psychological issues. In sum, the record lacks substantial evidence to support the ALJ's finding that Plaintiff's subjective symptom testimony is contradicted by his improvement with treatment.

**F.    Inconsistency With the Medical Record**

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully

corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

Here, the ALJ merely summarized objective medical findings to reject Plaintiff's testimony. Tr. 23. The ALJ failed to link the particular parts of the record supporting she found non-credible to the parts of the record supporting her non-disability determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (an ALJ must "link" the testimony they find not credible "to the particular parts of the record supporting [their] non-credibility determination"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (an "ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints") (citation and quotations omitted). Although there may have been substantial evidence in the record for the ALJ to reject portions of plaintiff's testimony based on the objective medical evidence, *see Carmickle*, 533 F.3d at 1161, the ALJ failed to link that evidence with the specific testimony she rejected. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible.")  (citing *Brown-Hunter*, 806 F.3d at 494).

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony based on his activities of daily living, work activity, improvement with treatment, and the objective medical evidence was not supported by specific, clear and convincing reasons.

## II.    Medical Opinion Evidence

Plaintiff next asserts that the ALJ improperly rejected the medical opinion from Dr. Whiteley, M.D. Pl.'s Opening Br. 5. This Court agrees.

A.    **Legal Standards**

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §

404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### B.    Analysis

Dr. Whiteley has been Plaintiff's treating psychiatrist since February 2018. Tr. 683. Dr. Whiteley sees Plaintiff every one to three months for psychiatric medication management. *Id.* In May 2022, Dr. Whiteley completed both a treating source statement and medical source statement on behalf of Plaintiff's SSI claim. Tr. 683-90. Plaintiff was diagnosed with bipolar II disorder; depressive episode; ADHD, inattentive type; generalized anxiety disorder; panic disorder; and insomnia. *Id.* Dr. Whiteley reported that Plaintiff's mood cycled between mild to moderate highs, during which he felt grandiose and impulsive, and experienced severe depressive episodes and decreased sleep. Tr. 684. Dr. Whiteley stated that Plaintiff experienced "background anxiety much of the time" with panic attacks lasting fifteen to sixty minutes once or twice a week. *Id.* Dr. Whiteley also noted that Plaintiff experienced decreased concentration and focus and has difficulty shifting focus *Id.* Dr. Whiteley discussed how Plaintiff's "limited focus, decreased impulse control, [and] heightened anxiety around other people ma[d]e it not possible [for Plaintiff] to work for many years." *Id.* Dr. Whiteley explained that "for years [Plaintiff] attempted to work, [and was] never able to do so full[-]time, or for very long" and he was unable to remember things even repeated reminders." *Id.* He further explained that "The fact that {Plaintiff] has genuinely tried and repeatedly failed to be able to hold even part-time work makes it clear that he has tried, failed, [and] cannot work full-time in any capacity" Tr. 688.

Dr. Whiteley opined that Plaintiff is moderately limited in his ability to understand and remember simple instructions. Tr. 687. Dr. Whiteley assessed marked limitations in Plaintiff's ability to carry out simple instructions; make judgments on simple work-related decisions; understand, remember, and carry out complex instructions; interact appropriately with the public, supervisors, and coworkers; and respond appropriately to usual work situations and changes in a routine work setting. *Id.* Dr. Whiteley opined that Plaintiff is extremely limited in his ability to make judgments on complex work-related decisions. Tr. 687. He opined Plaintiff would be off task at least 15% of the workday and absent from more than four days per month due to his impairments. Tr. 689-90. Dr. Whiteley reported that he based his assessments on psychological testing done on August 25, 2016, and he opined that the assessed limitations were documented in Plaintiff's records going back to at least 2012. Tr. 688.

The ALJ found Dr. Whiteley's opinion unpersuasive. Tr. 24. The ALJ's reasoning for rejecting Dr. Whiteley's opinion essentially mirrors the reasoning she provided when rejecting Plaintiff's subjective symptom testimony, as she discussed Plaintiff's activities of daily living, improvement with treatment, and the objective medical evidence. Tr. 24-25.

The ALJ reasoned that the limitations assessed by Dr. Whiteley are "inconsistent with Plaintiff's ability to help elderly people in the neighborhood, do laundry, and go shopping, his ability to live with and raise his daughter, his ability to find and apply for a new apartment, [and] his ability to work on a part-time basis. . . " Tr. 25 (citing Tr. 460-61, 613-14, 639, 651, 666). For the same reasons discussed above in the subjective symptom testimony section, this Court finds the ALJ's analysis of these activities undeveloped, and Plaintiff's activities do not constitute substantial evidence.

As to Plaintiff's improvement with treatment, the ALJ again cited a treatment note where Dr. Whiteley observed that Plaintiff "seems to be functioning well as a father now," but ultimately ignored the context in which this statement was given in. *Id.* (citing Tr. 577-78). The ALJ also cited treatment notes where Dr. Whiteley reported Plaintiff was ""doing very well" and that his mood, anxiety, and thinking were "much better."" *Id.* (citing Tr. 651). The ALJ also stated that Dr. Whiteley noted several times throughout treatment records that Plaintiff had "moderately improved since starting treatment. Tr. 25 (citing Tr. 386-88). The ALJ concluded "these treatment records are not consistent with marked to extreme mental health limitations in the workplace, nor are they consistent with the off-task and absenteeism limitations." Tr. 25. For the same reasons discussed above in the subjective symptom testimony section, this Court finds that these isolated instances of improvement are not substantial evidence. *Richard R.*, 2020 WL 4193114, at *4 (D. Or. July 21, 2020).

As to the objective medical evidence, the ALJ reasoned that "the opinion of Dr. Whiteley goes far beyond the scope of the medical evidence of record" and she cited treatment notes she found to be inconsistent with the assessed limitations. Tr. 25. An ALJ may not selectively rely on evidence to support the conclusion that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole. *See Holohan*, 246 F.3d at 1207 ("[T]he ALJ selectively relied on some entries in [the claimant's] records ... and ignored the many others that indicated continued, severe impairment."). Here, the ALJ ignored Plaintiff's accommodations and selectively relied on very few treatment records to discount their testimony rather than considering the entire record. The ALJ also found that Plaintiff's marked limitations in his ability to interact with others is contradicted by the medical evidence demonstrating that he is cooperative, open and engaged in behavior at his examinations, exhibits fair or good eye contact, normal mood and affect. Tr. 25

(citing Tr. 315, 320, 387, 396, 414, 431, 454, 461, 468, 473, 477, 486, 493, 559, 579, 601, 615, 641, 652, 666, 677). Similarly, the ALJ found that Plaintiff's marked limitation in his ability to carry out simple instructions, make judgments on simple work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting, and the extreme limitation in his ability to make judgments on complex work-related decisions are not consistent with the record. Tr. 25. To support this conclusion, the ALJ cited treatment notes that "repeatedly show evidence of linear and goal-directed though process, normal memory, full orientation, normal rate, volume, and tone of speech, no evidence of dissociation, hallucinations, or delusions, well-groomed appearance, denials of suicidality or homicidal ideation, normal judgment, normal insight, and only occasional or mild depression and anxiety." *Id.* (citing Tr. 315, 387, 396, 414, 431, 454, 461, 468, 473, 477, 486, 493, 559, 579, 601, 615, 641, 652, 666, 677).

The ALJ mischaracterized the record when discussing Plaintiff's ability to engage with healthcare providers on exam. The ALJ failed to explain how Plaintiff's ability to present to appointments with "normal speech," "good eye contact," "goal directed process" and be "well-groomed" are inconsistent with Dr. Whiteley's opinion. Although there are some "normal" observations, their significance is undermined by the fact that they are frequently made during the course of examinations which clearly acknowledge Plaintiff's mental health problems. And, more telling than these routine observations, a mental health assessment resulted in a score of 23, which the ALJ acknowledged was "in the range of significant depression." Tr. 128, 621.

Further, a holistic review of the record supports plaintiff's testimony regarding the severity of her mental health symptoms. He has a PHQ-9 score of 21 and a GAD-7 score of 19, indicating severe depression and anxiety. Tr. 574-77. These citations made by the ALJ ignore the

overall clinical impression Dr. Whiteley gave, including the multiple instances where Dr. Whiteley noted that Plaintiff has "certainly been disabled"[5] and "certainly not able to work full-time" Tr. 452, 577; *see also* Tr. 599, 650. Viewing the record as a whole, the ALJ lacked substantial evidence to discount Plaintiff's mental health symptom testimony based on a conflict with the medical records.

### III.    Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). As relevant here, the Court may only remand for payment of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Plaintiff asserts that this case should be remanded "for an award of benefits or, in the alternative, . . . remand[ed] for further proceedings" Pl.'s Reply Br. 5. In his reply, Plaintiff illustrates the credit as true standard, but does not provide any analysis as to why Plaintiff's

---

[5] This Court recognizes that whether Plaintiff can return to work is an issue reserved to the Commissioner, however, this Court discusses this statement from the ALJ to demonstrate that the ALJ ignored the record as a whole and merely cited isolated "normal" objective findings, when using Dr. Whiteley's own treatment notes to discredit his opinion.

subjective symptom testimony and Dr. Whiteley's medical opinion should be credited as true. Pl.'s Reply Br. 3-6. This Court need not engage in a detailed discussion of the credit-as-true standard because "Plaintiff has not meaningfully argued that remand for an immediate award of benefits is appropriate here." *Marshall M. v. Comm'r Soc. Sec. Admin.*, No. 3:23-CV-00039-SB, 2024 WL 2317386, at *9 (D. Or. May 22, 2024); *see Alicia D. v. Kijakazi*, No. 3:20-cv-01222-SB, 2022 WL 891786, at *11 (D. Or. Mar. 3, 2022) ("The Court must remand this case for further proceedings because Plaintiff has not met the credit-as-true standard (as she appears to acknowledge by not briefing the issue)."), *findings and recommendation adopted*, 2022 WL 888297 (D. Or. Mar. 25, 2022). Instead, this Court concludes there are ambiguities in the record concerning Plaintiff's limitations, and further proceedings would serve a useful purpose.

On remand, the ALJ must (1) accept Dr. Whiteley's opinion or provide legally sufficient reasons for rejecting them, (2) accept Plaintiff's testimony or provide legally sufficient reasons for rejecting it, (3) review any new evidence, and (4) as necessary, reweigh the medical and other evidence of record, reformulate Plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 25th day of October, 2024.

ANDREW HALLMAN
United States Magistrate Judge